Colcock, J.
In determining this case, it appears to me that our enquiry will be, what, under all the circumstances of it, was the intention of the parties to the contract 1 '■ For this intention, when discoverable, ought, unquestionably, to be the polar star by which the court should be governed. In this enquiry, the fact stated in *331 the brief that the insured endeavored to procure insurance on the vessel both at and from the city of Amsterdam, is one of great importance, because it must necessarily have led to a conversation on, and an understanding of that usage which is relied on by the defendants as proof that the voyage was not commenced. But before I proceed further, I lay it down as clear law, on the authority of Marshall, page 571 ; “ In mercantile cases from Lord Holt’s time, and in policies of insurance in particular, a great latitude of construction, as to usage, has been admitted. By usage, places come within the policy, which are hot within the words. Usage explains, and even controls the policy and, says Lord Ellenbo-rough, in the case of Kingston v. Knibbs, “ underwriters are bound to take notice of the usage.” The persons about to perform the voyage, must necessarily have known it. It appears that it is the usage for vessels of the burthen of the William and Mary, to take in a part of their cargo at Amsterdam, and the rest at the Texel; this was stated in the brief, and not contradicted ; and fiAljer, it • was proved by the map of Bushing, introduced, showing tffiplOT pus^nd other shoals in the river, to be such as could not be passed by a vessel of her burthen, when full loaded, and it is a fair presumption, the distance of the voyage considered, and there being no evidence to the contrary, that she was to bring a full cargo. It appears, then, that the parties knew that this, vessel would take in a part of her cargo at Amsterdam, and the rest at the Texel, and that the underwriters refused to insure at; an insurance at, protects a vessel while loading ; they kn'ew she was to take in a part of her load at the Texel, and they refused to insure at; and the verdict would have the effect of creating a liability,., which, it appears to me, the defendants expressly intended to avoid. The conclusion is, then, in my humble judgment, irresistible, that it was the under, standing of the parties, that the risk should not commence until the vessel set out on her homeward voyage, or until, as it is expressed, she broke ground bona fide intending to return. But what is law on this subject? Marshall, p. 615, says, “ Suffice it to say, that in the case of a ship, if she be insured from a place, it will be sufficient to prove, that she weighed anchor, or broke ground, in order to sail on the voyage insured.” Now, where is the evidence that this vessel broke ground to sail on the voyage ? It appears to me, that it would be equally just, to say, that the underwriters, in such a case, would be liable where a vessel was moving from one wharf to another, for the distance from Amsterdam to the Texel is, in my opinion, of no importance in the case, it appearing that there *332 was no danger to be apprehended in a light vessel, and that in fact there was no pilot on board this. I consider this, then, as a case in, which I am imperatively bound to say, that the usage must control the policy; that the Texel and Amsterdam áre to be considered as the same ; and that the parties so intended the contract. I do, not consider it necessary to say any thing on the second ground, being clearly of opinion on the first, that a new trial should be, granted.
Nott, J.
The vessel in question was insured from Amsterdam to Charleston ; she took in part of her cargo at Amsterdam, and then moved down on the Zuyder Zee to the Texel, where the remainder of the cargo was brought in lighters. After the cargo was all on board, and the vessel, in all respects, ready for sea, she was prevented from sailing by adverse winds, and at length a violent storm arose, by which she was destroyed. It appears, that .between Amsterdam and the Texel, are dangerous shoals, over •whichArge ships fully laden cannot pass; the method pursued by 4^#sh™ therefore, was according to, the usual course of that trade. A verdict has been found for the plaintiff against the underwriters ; and this is a motion for a new trial on the ground, that the risk had not commenced until the vessel had left the Texel. It is contended that a voyage is never begun until the cargo is all on board, and the vessel ready for sea, and has actually broke ground for her final departure, and with a view to pursue her voyage ; and as this was not done, and could not be done until she arrived at the Texel, she was constructively at Amsterdam, and that the voyage, and of course the risk, had not commenced until she had set sail from the Texel. The general rule of law, unquestionably, is as laid down by defendant’s counsel, but whether the custom and usage of his particular trade does not form an exception to that general rule, is the. point to be determined ; and in order to decide this point, we must first .obtain a correct statement of facts. In the first place, then, it is a fact, that the Texel and Amsterdam are a considerable distance, probably more than a hundred miles, from each other. In the second place, that this vessel had left Amsterdam, with a view of pursuing her voyage to Charleston, subject to such necessary delay only as must have taken place at the Texel. In the third, place, it is admitted that this is the usual course of trade at that place ; and in the fourth place, that there is no inconsiderable risk in the navigation between Amsterdam and the Texel. So that from these facts, the following questions arise : 1. Can two places ¡so far distant from each other, be considered prima facie, either in *333 Saw, or in fact, the same ? And can a vessel lying at one, be considered as lying at the other? 2. Isa vessel, under such circumstances, to be considered as having commenced her voyage 1 3. Does a policy, insuring a vessel from Amsterdam to Charleston, embrace the risk between Amsterdam and the Texel ? . I apprehend, that if these questions were put to any person of plain common understanding, whose mind was not fpttered by technical dis. tinctions and legal subtleties, he could not hesitate to say that prima facie, the Texel is not to be considered as a part of the port of Amsterdam, and that the voyage had commenced, and of course .the risk, from the time-she broke ground at Amsterdam. If there is any usage or custom to rebut this prima' facie presumption, it should have been proved. The vessel had actually left Amsterdam for the purpose of pursuing h.er intended voyage, for she did not intend to return there ; and although she had not all her cargo on board, yet. if this was according to the usual course of that trade, the. underwriters must be bound by it. Suppose the usual;!,course of trade from Charleston to London, was by Halifax, and there’tót take In a part of the cargo ; would not a vessel insured from Charleston to London, be considered as having commenced her voyage before she arrived at Halifax, and would not the insurers be liable for any risk between the two places ? I should have no doubt of it; custom and usage must govern in such cases. An underwriter is bound to take notice of the usages of trade. Park. 309. If there had been any evidence to shew, that according to mercantile custom and usage, or in the understanding of mercantile men engaged in this trade,-that the Texel was considered as a part of the. port of Amsterdam, and that the risk should be calculated only from that place, I should think the verdict ought to be set aside. Such evidence certainly could have been produced, if it existed, and as none such was offered, I presume the fact is not so. With regard to the case of Dennis and Williams, 3 N. Y. T. R., the court says, that as to the inception of the voyage by sailing from the port of Savannah, or from Cockspur, if depends on the quo animo, or tona fide intention of the party. That she left Savannah for a temporary purpose, distinct from the voyage. In the present case she left Amsterdam, not for. a temporary purpose, distinct from the voyage, but for the purpose of pursuing her voyage, a part of which voyage was from Amsterdam to the Texel. The question, with all its circumstances, has been submitted to a jury, and I see no ground to set aside their verdict. Vide 1 Camp. 500, in note, Kingston v. Knibbs.
*334 Brevard, J.
The defendants insured the plaintiff’s brig from Amsterdam to Charleston. The brig sailed on the voyage insured from Amsterdam, and arrived in a few days afterwards at the Texel, a smaB island at the mouth of the Zuyder Zee, divided from the continent by a narrow channel, through which most ships pass to Amsterdam, where she took in part of her cargo. The harbor of Amsterdam, though one of the largest in Europe, and one of the safest, has *a bar at the entrance of it, over which large vessels cannot pass without being lightened. It was, therefore, necessary to send on from Amsterdam a lighter, with the part of the cargo , which was taken in at the Texel. The brig was delayed at the Texel some days, by adverse winds, and before she set sail thence on her voyage, encountered a violent gale, which did her considerable injury. She was afterwards repaired, and then proceeded, and arrived in safety at the port of destination. The present action was brought for the expenses of repairs, &c., in consequence of the injury stated, and a verdict was found for the plaintiff. The motion before this court is for a new trial, on the ground, that the loss which happened was not a loss within the spirit and true meaning of the policy in question, and, therefore, not recoverable ; because the vessel insured had not, according to the usage of trade at Amsterdam, proceeded on her voyage from Amsterdam, and the risk had not commenced when the injury happened. It is very clear that the risk was not begun, if it can be considered that the vessel had not broke ground, as it is termed, or set sail on her intended voyage before the injury occurred. But unless Amsterdam and the Texel can be considered as the same place, quoad hoc, the voyage certainly was begun from the sailing of the brig from the harbor or port of Amsterdam. There was no evidence of any usage of trade, from which a conclusion can be drawn, that a voyage from Amsterdam-commences from the departure of the ship, not from her setting sail from the harbor of Amsterdam, but from her departure from the Texel, after having received her full cargo from lighters, sent on after her to the Texel, for that purpose. It seems to be the usual practice, arising from necessity, for vessels of considerable burthen to take in part of their cargo at the Texel; but it does not thence follow, that the voyage may not, nevertheless, begin from the time of breaking ground in the harbor before the city of Amsterdam. Stopping to take in part of the cargo at the Texel, may be considered as an ordinary occurrence, in- the usual course of the voyage, and in the course of trade in that placte. 1 Burr. 348. 2 Bos. and Pul. 431. For any thing that appears, *335 •the lighter might have belonged to the brig, or was employed by the master to attend the brig to that particular place, in the prosecution of the voyage. If so, the whole cargo was actually received at Amsterdam, and the detention at the Texel was for the necessary accommodation and convenience of the assured, in consequence of adverse weather. Some stress was laid in the argument on two collateral circumstances which were mentioned ; one was the receipt of one Hamilton, at the Helder, for some necessary articles for the use of the brig, and the other was, that the captain of the brig was on shore at the time when the injury to the brig happened ; ■but both of these events might take place as well during a voyage as before its commencement. I regard them, therefore, as immaterial in this case. It has also been said in argument, that unless ■the voyage commenced from the Texel, it was a deviation to go there ; this is a non sequilen: for it appears to be a going and stopping in the direct course of the voyage, and according to the usual course of the trade of the place. The brig, it appears, was warranted safe at the Texel, at the time the insurance was effected, but nothing can be thence inferred to shew that the adventure was not to begin at another place. From all these considerations, my opinion is, that the injury from which the loss in question happened, took place during the voyage insured, and not before its commencement, and, therefore, I cannot consent to set aside the verdict which the plaintiff has obtained.
Geimke, J.
The question here is, what shall be a departure from Amsterdam, within the meaning of the policy. The general law on this subject is very plain, for it is laid down in Molloy, 255, that if a ship is insured from a port, the insurance does not commence until the voyage is begun, so that the insurer is not liable for a loss in port; but if she once breaks ground, though driven back into port, the insurer is liable for a loss, for the voyage was begun. Magens, speaking of the risk on the body of a ship, says, that it depends on the form of the policy which is very variable and depends upon the inclination of the insured, sometimes the risk commencing from the beginning to load, or from and after her arrival at the port abroad, or from the departure. I Magens, 47. Marshall, 173, mentions the same variableness for the commencement of the risk, and adds that when the insurance on a ship is from a port, then if any accident happens to her, the insurers are not answerable, for the risk does not commence till she set sail on her departure from the port; and again, he speaks more definitively when he says, that according to the doctrine of Lord *336 Mansfield, in Cowper, 607, if the ship get Under way with intent to proceed on the voyage insured,- the warranty has been complied with; for it does not require that she shall absolutely leave her Port departure, but only get under way with intent to proceed.Marshall, 261. To test this case by the law above quoted, we must attend to the facts. The vessel, it appears, had arrived safe in the Texel, upon which the plaintiff applied to the defendants to underwrite her at and from ; this they refused, but agreed to take' her from Amsterdam only. The vessel accordingly proceeded up to the city and unloaded her cargo. She then took in part of her return cargo, and left the city of Amsterdam with boats following her with the remainder. It appeared that she was of such burthen that she could not take in the whole of her loading at the city on account of the shoal called the Pampus, which she was obliged to pass over half laden ; and it was moreover proved, that this was the usage of the trade of that port. After having taken in the rest of the loading at the Holder, the captain obtained the necessary clearances, shipped a pilot, and was completely ready for sea. The evidence also showed that he was delayed for several days after this, by contrary winds, and that before he could put to sea, a storm arose, which occasioned the accident for the repairs of which this action is brought. It has been argued for the defendants, that when the vessel left Amsterdam, she was not ready for her voyage, and that, therefore, the risk could not commence at that time. Marshall, 173. That afterwards, when all things were prepared for the voyage at the Helder, the risk had not commenced,for she had not set sail on her departure, that she did not even get under way with intent to proceed, therefore the warranty had not been complied with. Abbott, 186. To which it has been replied, that when she left Amsterdam, she got under way with intent to1 proceed on the voyage insured ; that the warranty of a policy does not require that she shall absolutely leave her port of departure, but only get under way with intent to proceed.- Cowp. 607. Marshall, 261. That having done so, whether she was loaded or not,was immaterial to the defendants, because the policy was on the body of the vessel; whenever, therefore, she quitted Amsterdam,the warranty immediately attached. 2. That she had conformed to the usage of trade in that port, in falling down to the Helder, to take in the remainder of her cargo ; that the defendants were' bound to know the usage of trade of that port, and that the insured is not bound to explain the nature of it to them; that since, therefore, the vessel complied with the ordinary usage of trade of that *337 |Sort, the warranty attached upon her as soon as she ivas ready for sea ; for, having left Amsterdam with intention to take in the rest of her cargo according to the usage of that trade, as soon as she was completely equipped for sea, she must, in construction of law, he considered as having proceeded from'Amsterdam to the Helder, With intent to prosecute the voyage-; that if she could have taken in the whole of her cnrgo at the city, and had then gone down to the pielder, been detained by adverse winds, and that the accident had then happened, the underwriters would be liable. I will obi serve, that the defendants in this case, had left little or nothing to con. struction, for they have made use of words, by which it appears,- that they meant to give a definite signification, and exclusive expression of the warranty they entered into. They have not barely said from Amsterdam, but they have annexed the word only.
They have not, as is usual, declared the insurance from the port of Amsterdam, but have restricted their intent and meaning, by the precise expression, from Amsterdam only. Had they used the words, “ port of Amsterdam,” then' such expression might have given rise to another view of the case, and in which it would have been necessary to have considered, what was the port, and how far it extended. But eapressio unius, est exclusio alterius; as they have particularly declared that they will undertake to insure this Vessel from no other place whatever, than from Amsterdam only, they, have excluded themselves from such usual construction-as might have been put on their warranty, if it had been from Amsterdam generally. They cannot, therefore, travel out of their own record, and say by Amsterdam only, we mean when you should have been completely prepared for sea, and that you had actually set sail, with intent to leave'your port of departure. This would, indeed, be not only extending a very liberal construction to contracts, but would in my opinion, in such a case as this, vary the risk most materially.
The insured wish to be insured from Amsterdam ; why ? because the vessel would have to encounter the risk of passing the shoals betw'een the city and the Helder, and would be obliged by the usage of that trade, to lie at the Helder for somé time, until she could take in the rest of the cargo. And was there no risk in lying there for that purpose, during the months of December and January ; the. result shows that there was a risk, since she was damaged while she lay there at anchor, ready for sea. If there are such-risks between the city and the Helder, and during the time she lay there, is it not the most natural conclusion from the expression of *338 ^e'r own words, and the specifications thereof, that they meant to insure this vessel against all risks after she had left the city of Amsterdam ? Now this I consider as one of the cases, wherein as Magens and Marshall have said, the commencement of the risk varies, and in which the terms made use of are to be conclusive as to the nature of the contract. In this case, I do think the defen. dants have so tied up themselves, that they have left nothing to construction, and by which, in my opinion, they are bound. It may be argued that the word only should be applied to explain the intention of the defendants, limiting their warranty from, and ex-eluding the risk at; to which, I reply, that if such had been their intention, there was no occasion to add the word only, because if they had said “ from Amsterdam,” it would have as much excluded the warranty at, as if they had said, we take this policy from Amsterdam, but not at. But considering that they must or ought to have known the usage of this trade, the addition of the word only after Amsterdam, gives it the force and efficacy of commencing, the risk when she quits the city. I shall take no notice of the ground of deviation insisted on by the defendants, because where a vessel complies with the usage of a port, there can be no deviation, to discharge the insurers ; they must prove that the departure was voluntary ; that the course of the voyage pursued by the captain was not the usual one, and that the deviation was not warranted by any necessity. As they have not proved any of these points, the charge of deviation must fall to the ground. I am of opinion, upon considering the whole circumstances of this case, and seeing that the defendants have laid down the rule by which they meant to be guided in their contract, that the verdict is right, and that thero must be no new trial.